**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**DAVID HOCHMAN and LEIGH ANN HOCHMAN,**

Plaintiffs,

v.

**UNITED STATES OF AMERICA,**

Defendant.

Civil Action No. 25-13510 (ZNQ) (JBD)

**OPINION**

**QURAISHI, U.S.D.J.**

This matter comes before the Court upon a Motion to Dismiss filed by Defendant the United States of America ("Defendant"). ("Motion," ECF No. 25.) Defendant filed a brief in support of the Motion. ("Moving Br.," ECF No. 25-1.) Plaintiffs David Hochman ("Mr. Hochman") and Leigh Ann Hochman (collectively, "Plaintiffs") filed opposition ("Opp'n Br.," ECF No. 26), to which Defendant replied ("Reply Br.," ECF No. 29.)

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's Motion to Dismiss will be **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND AND PROCEDURAL HISTORY

This case stems from a motor vehicle accident that occurred on the property of the United States Post Office located at 36 Beach Road, Suite 8, Monmouth Beach, New Jersey (the "Post Office"). (ECF No. 1, Compl. ¶¶ 5.1–5.4.) At all times relevant, the Post Office was located within the Village Square Plaza, (*id.* ¶ 5.2), and the United States Postal Service ("the Postal

Service") leased the Post Office property, (*id.* ¶ 5.18.) On July 27, 2023, third-party James Jennings, an elderly man,[1] was operating a motor vehicle in the parking lot of Village Square Plaza attempting to park in a parking space in front of the Post Office. (*Id.* ¶ 5.2.) While Mr. Jennings was attempting to park his vehicle, Mr. Hochman was a pedestrian on the sidewalk located directly between the Post Office and the parking spot that Mr. Jennings was attempting to park in. (*Id.* ¶¶ 5.3–5.4.) Mr. Hochman was walking on this section of the sidewalk after he had mailed a letter at the sidewalk mailbox. The mailbox was located on the sidewalk directly in front of Mr. Jennings' intended parking spot. (*Id.*) As Mr. Jennings attempted to park his vehicle, he mistook the accelerator for the brake and failed to maintain control over his vehicle, thereby jolting the vehicle forward onto the sidewalk and crashing into Mr. Hochman. (*Id.* ¶ 5.4.) Mr. Hochman was pinned against the Post Office, crushing his right leg. (*Id.*) As a result of Mr. Hochman's injuries, his right leg was amputated. (*Id.*)

Plaintiffs allege that Mr. Hochman's injuries were the result of operational failures of the Postal Service to maintain its property in a safe condition for its pedestrian invitees. (*Id.* ¶ 5.8.) Specifically, Plaintiffs allege that the Postal Service "failed to remedy unsecured, inappropriately placed concrete wheel stops that created a known hazardous condition in the parking lot, when its handbook states that concrete wheel stops are to be avoided." (*Id.*) Plaintiffs contend that these failures, coupled with the Postal Service's decision to offer a pedestrian mailbox outside the building, directly adjacent to parking spots, constitutes a failure to exercise reasonable care to make that area safe for invitees of the Post Office. (*Id.*) Plaintiffs allege that Mr. Hochman relied on the Postal Service to provide safe pedestrian access to and from the Post Office, including the pedestrian mailbox, and Mr. Hochman's injuries are a result of his reliance. (*Id.*) To that end,

[1] "The United States asserts in its briefing that Mr. Jennings was 98 years old at the time of the incident (Moving Br. at 1), a fact that Plaintiffs do not dispute.

Plaintiffs allege that the area immediately surrounding the pedestrian mailbox was unprotected with no safety barriers between it and the parking lot except for unsecured, misplaced concrete wheel stops. (*Id.* ¶¶ 5.9, 5.13.) Plaintiffs theorize that the unsecured wheel stop in the parking spot that Mr. Jennings was attempting to park in "act[ed] as a ramp, projecting Mr. Jennings' vehicle onto the sidewalk and into Mr. Hochman." (*Id.* ¶ 5.14.)

On June 26, 2024, Plaintiffs submitted claims to the Postal Service pursuant to 28 U.S.C. §§ 2672 and 2675(a), and the Postal Service acknowledged receipt of the claims on October 25, 2024, confirming that the claims were presented on September 27, 2024. (Compl. ¶¶ 4.1-4.2.) Plaintiffs each claimed $40,000,000 individually in personal injuries. (*Id.* ¶¶ 4.3-4.4.) On March 6, 2025, the Postal Service denied Plaintiffs' claims. (*Id.*)

On July 18, 2025, Plaintiffs filed suit before the Court. (ECF No. 1.) The present motion followed.

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(1), a defendant may move to dismiss a claim for lack of jurisdiction over the subject matter at any time in a case. *In re Kaiser Group Int'l, Inc.*, 399 F.3d 558, 565 (3d Cir. 2005) (citing Fed. R. Civ. P. 12(b)(1)). "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). If the defendant's attack is facial, the court may take all allegations in the complaint as true and "may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction." *Liu v. Gonzales*, Civ. No. 07-1797, 2007 WL 2916511, at *3 (D.N.J. Oct. 5, 2007) (citing *Cardio-Medic. Assocs., Ltd. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983)). "When resolving a factual challenge, the court may consult materials outside the pleadings, and the burden of proving

jurisdiction rests with the plaintiff." *Med. Soc'y of N.J. v. Herr*, 191 F. Supp. 2d 574, 578 (D.N.J. 2002) (citing *Gould Elecs. Inc. v. U.S.*, 220 F.3d 169, 176, 178 (3d Cir. 2000)).

Defendant does not state whether its Motion presents a facial or factual challenge. However, the Court will construe Defendant's Motion as a factual challenge, given that Defendant has submitted multiple declarations which were not referenced in or attached to the complaint, and accordingly consider the allegations of the complaint and "evidence outside the pleadings." *Gould Elecs., Inc.*, 220 F.3d at 176, 178.

## III. DISCUSSION

Defendant argues that Plaintiffs' claims should be dismissed for lack of subject matter jurisdiction because the traffic, pedestrian, and parking safety deficiencies that Plaintiffs allege caused Mr. Hochman's injuries are discretionary, policy-based decision making by a federal employee that are exempted from the Federal Tort Claims Act ("FTCA").

Plaintiffs contend that their claims are not barred for two reasons. First, Plaintiffs believe their claims arise from the Postal Service's operational failure to abide by mandatory requirements and regulations, not discretionary policy choices. Second, Plaintiffs argue that their claims sound in premises liability and operational failures of the Postal Service to exercise reasonable care in the maintenance of the Post Office.

"[T]he United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (internal quotation marks and citations omitted). "Sovereign immunity, therefore, deprives a court of subject matter jurisdiction over a claim against the United States unless a statute grants an express waiver of immunity." *White-Squire v. United States Postal Serv.*, Civ. No. 08-3486, 2009 WL 313338, at *3 (D.N.J. Feb. 6,

2009) (citing *United States v. Bein*, 214 F.3d 408, 412 (3d Cir. 2000)). Thus, the FTCA is jurisdictional in nature, as it provides a limited waiver of sovereign immunity for negligent acts committed "by an officer or employee of the federal government acting within the scope of his/her employment." *Fontanez v. Lopez*, Civ. No. 11-2573, 2011 WL 2745809, at *8 (D.N.J. July 12, 2011) (citing 28 U.S.C. § 2672).

Pursuant to the FTCA, the United States shall be liable, to the same extent as a private party, "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). "The FTCA waives the federal government's sovereign immunity with respect to tort claims for money damages." *Baer v. United States*, 722 F.3d 168, 172 (3d Cir. 2013) (citing 28 U.S.C. § 1346(b)(1)). However, "[a]ny such waiver must be strictly construed in favor of the United States." *Beneficial Consumer Discount Co. v. Poltonowicz*, 47 F.3d 91, 93–94 (3d Cir. 1995).

Accordingly, if the United States has not waived its sovereign immunity, or if the conditions under which the United States has agreed to waive that immunity have not been met, federal subject matter jurisdiction does not exist over a party's claims against the United States. *See, e.g.*, *Treasurer of N.J. v. U.S. Dep't of Treasury*, 684 F.3d 382, 395–96 (3d Cir. 2012). The party asserting claims against the United States bears the burden of establishing that the United States has waived sovereign immunity. *See In re Orthopedic Bone Screw Product Liab. Litig.*, 264 F.3d 344, 361 (2001) (footnote omitted).

### A. THE DISCRETIONARY FUNCTION EXCEPTION

"The discretionary function exception limits [the FTCA's] waiver, eliminating jurisdiction for claims based upon the exercise of a discretionary function on the part of an employee of the

government." *Baer*, 722 F.3d at 172 (citing 28 U.S.C. § 2680(a)). The discretionary function exception preserves the United States' sovereign immunity for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). "The plaintiff . . . bears the burden of demonstrating that [its] claims fall within the scope of the FTCA's waiver of government immunity, but [t]he United States has the burden of proving the applicability of the discretionary function exception." *Merando v. United States*, 517 F.3d 160, 164 (3d Cir.2008) (citations and internal quotation marks omitted).

Initially, to determine "whether the discretionary function exception immunizes the [United States] from suit based on its conduct," the Court must first "identify the conduct at issue." *Donaldson v. United States*, 281 F. App'x 75, 76-77 (3d Cir. 2008). Once the relevant issues have been identified, the Court must employ a two-part test to determine whether the discretionary function exception applies. *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

First, the court must consider whether the action "involves an element of judgment or choice." *Id.*; *Baer*, 722 F.3d at 172 ("This inquiry is mandated by the language of the exception; conduct cannot be discretionary unless it involves an element of judgment or choice."). An act involves judgment or choice if there is no "federal statute, regulation, or policy specifically prescrib[ing] a course of action for an employee to follow." *Cestonaro v. United States*, 211 F.3d, 749, 753 (3d Cir. 2000) (citation omitted). Second, the Court must determine whether the judgment exercised "is of the kind that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 531; *see United States v. Gaubert*, 499 U.S. 315, 323–24 (1991). Thus, the discretionary function exception "protects only governmental actions and decisions

based on considerations of public policy." *Berkovitz*, 486 U.S. at 537. "[I]f a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Gaubert*, 499 U.S. at 324. "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* at 325.

The Court has reviewed Plaintiffs' complaint and has determined that the principal issue is whether Defendant negligently failed to provide a safe means of pedestrian egress to and from the Post Office and sidewalk mailbox, and more specifically whether Defendant is liable for the misplacement of, or failure to maintain in good condition or repair, wheel stops in the parking lot adjoining the Post Office. The Court derives this determination from Plaintiffs' allegations that an unsecured wheel stop in the parking spot that Mr. Jennings was attempting to park in "act[ed] as a ramp, projecting Mr. Jennings' vehicle onto the sidewalk and into Mr. Hochman[,]" (Compl. ¶ 5.14), and that the sidewalk and pedestrian mailbox were otherwise unprotected with no safety barriers, (*id.* ¶¶ 5.9, 5.13.)

Plaintiffs' contention is therefore that the Postal Service "failed to remedy unsecured, inappropriately placed concrete wheel stops that created a known hazardous condition in the parking lot, when its handbook states that concrete wheel stops are to be avoided." (*Id.* ¶ 5.8.) Defendant challenges Plaintiffs' complaint not on the sufficiency of the facts, but on the basis that the facts, as alleged, evidence traffic, parking, and safety decisions regarding the design of the Post Office that fit squarely within the discretionary function exception to the FTCA. In support, Defendant offers two declarations from Postal Service employees and proceeds to argue that the

plain language of the Handbook[2] dictates that any relevant decisions were discretionary. Plaintiffs contend that the Handbook confers mandatory and prohibitory language, and even if it does not, they argue that their claims nonetheless sound in premises liability and are not barred by the discretionary function exception.

To begin, 39 U.S.C. § 101 ("Section 101") confers extensive discretionary authority to the Postal Service in the planning, building, and design of Postal Service facilities. There is no doubt that Section 101 confers discretionary authority to the Postal Service to design its facilities "to create desirable working conditions," with "a maximum degree of convenience for efficient postal services," considering "proper access to existing and future transportation facilities," keeping in mind the "control of costs to the Postal Service." In furtherance of that authority, the Postal Service has published the Handbook, which sets forth standard criteria for design and construction activities at Postal Service facilities.

As a threshold matter, the Court considers the applicability of the Handbook to the Post Office. Defendant contends that the Handbook is "not relevant nor applicable in the instant case, which involves an *existing* facility that has been leased by [the Postal Service] since 2007 and was not designed by [the Postal Service]." (Moving Br. at 9.) Defendant says that the Handbook cannot apply to the Post Office because it is "clearly limited to new design projects and builds." (*Id.*) The Court agrees and finds the Handbook inapplicable to the Post Office – the Policy Statement on the first page of the Handbook makes that clear: "This policy applies equally to ***all design and construction-related <u>activities</u>*** regardless of size, ***whether new construction or repair and alteration, owned or leased***." (Handbook at Introduction, 0-1 Policy Statement, p. 1, *see also*

[2] Plaintiffs attach the United States Postal Service Handbook AS-503, Standard Design Criteria (Oct. 1, 2022) (hereinafter the "Handbook") as Exhibit 2 (ECF No. 26-2) to the Declaration of Laurie Higginbotham (ECF No. 26-1.)

Module 3 – Repair & Alteration Criteria, 0-1 R&A Policy Statement, p. 1.) In essence, the Court finds that the Handbook is applicable to design and construction of all Postal Service facilities *only* when such design and/or construction is actively in progress—the Court reads this language to exclude existing facilities that are *not* subject to active design changes or construction *activities*, i.e., the Post Office.

Even if the Court were to agree with Plaintiffs that the Handbook is applicable, the Court finds that the relevant language of the Handbook is purely discretionary and the Postal Service is not required to install barriers or prohibited from using wheel stops. The Handbook provides guidance in, among other things, the design of facilities regarding the separation of pedestrian traffic from vehicular traffic to ensure safe means of pedestrian egress to and from the facilities, and some of the Handbook's guidelines address the use of barriers. For instance, the Handbook generally requires that "[p]arking must not encroach into fire hydrant zones, post indicator valves, approaches to corners, loading zones, or designated means of safe egress." (*Id.* at Module 1, Ch. 1-2.10.3 (Parking), p. 13).) Plaintiffs base their opposition on two specific guidelines in the Handbook that they believe constitute mandated directives: that the Postal Service (1) "[d]esign layout of customer parking and driveways to minimize danger from run-away vehicles. Use bollards, landscape areas, and curbs ***as required*** to lessen accident occurrences, particularly in accessible parking areas[,]" (Opp'n Br. at 12 (citing Handbook at Module 1 – Civil, Parking and Drives, Ch. 1-2.4.2 (Curbs and Curb Cuts), p. 7) (emphasis added)); and (2) "[a]void using wheel stops[,]" (*id.* (citing Handbook at Module 1 – Civil, Parking and Drives, Ch. 1-2.4.2 (Curbs and Curb Cuts), p. 7).)

At base, Plaintiffs argue that those instructions are plainly mandatory, prohibitory, and categorically remove discretion in the design of parking areas. (*Id.*) Defendant disputes this and

takes the position that "there is no use of language that would indicate a guideline is mandatory, such as 'required,' 'prohibited,' 'must,' 'must not' anywhere in the [Handbook] regarding bollards, landscaping, curbs or wheel stops." (Reply Br. at 3.) Thus, Defendant posits that the plain language of the Handbook's guidelines is sufficient to ascertain that the relevant guidelines are discretionary. Defendant's interpretation is the more persuasive.

Beginning with Plaintiffs' first-cited guideline, which directs the Postal Service to "[d]esign layout of customer parking and driveways to minimize danger from run-away vehicles. ***Use*** bollards, landscape areas, and curbs ***as required*** to lessen accident occurrences, particularly in accessible parking areas[,]" (Handbook at Module 1 – Civil, Parking and Drives, Ch. 1-2.4.2 (Curbs and Curb Cuts), p. 7) (emphases added), this language – while certainly containing the underpinnings of a generalized safety mandate – clearly exudes a discretionary tone as to how that safety mandate is achieved. The Postal Service is directed to ***use*** bollards, landscape areas, and curbs ***as required***, but Plaintiffs fail to cite any guideline that specifically provides ***when*** those measures are required. Thus, the "as required" language vests discretion in the Postal Service to determine when to implement such barriers when as necessary to ensure safety.

Turning to the second guideline that Plaintiffs cite – "[a]void using wheel stops[,]" (*id.* at Module 1 – Civil, Parking and Drives, Ch. 1-2.4.2 (Curbs and Curb Cuts), p. 7) – the Court reaches the same conclusion. Viewing this language in context of the relevant Curbs and Curb Cuts guideline, the Court notes that the remainder of the guideline is littered with strong mandatory, non-discretionary language:

> Use straight concrete curb construction, except for SBBD facilities. SSBDs should be designed without the need for curbs unless required by local authorities. Curbs ***are to be*** reinforced unless joints align. Curb and gutter ***shall only be used*** with an approved deviation. Curbs ***shall not be higher*** than 6 in. above paved areas. Curbs supporting handrails ***shall have*** chamfered tops.

> Provide ramps or depressed curbs to facilitate moving lawn care equipment in/out of landscaped areas and Building and Grounds storage areas.
>
> Avoid using wheel stops. Avoid using landscape islands with raised curbs where they can interfere with snow plowing.

(*Id.* (emphases added).) The first paragraph of this guideline employs mandatory, non-discretionary phrasing for the design and construction of curbs. But the language regarding wheel stops casts a markedly different, discretionary tone. The Handbook does not state that wheel stops "shall not" or "are not to" be used, or that the Postal Service "shall" avoid using wheel stops. Absent language of that nature, the Court interprets the guideline as suggestive insofar as the Postal Service *should* "[a]void using wheel stops." A guideline suggesting what the Postal Service should do falls short of expressing a mandatory directive. *See Northlight Harbor, LLC v. U.S.*, 561 F. Supp. 2d 517, 525 (D.N.J. 2008) (citing *Whalen v. United States*, 29 F. Supp. 2d 1093, 1097 (D.S.D. 1998) ("Obviously, statements discussing what 'should' be done cannot be considered mandatory.").

This interpretation also comports with the overall context of the parking design guidelines in the Handbook. Thus, even if the Court accepts Plaintiffs' contention (which it does not) that the relevant language—"[a]void using wheel stops"—is cast in mandatory phrasing, "[t]he use of a few mandatory words like 'shall' does not create a mandatory policy if the policy otherwise allows for discretion." *Lam v. United States*, 979 F.3d 665, 677 (9th Cir. 2020) (emphasizing "the importance of analyzing policies that contain mandatory words in their overall context"). The overall context of the Postal Service's policy for customer parking inherently assigns discretion to "**[d]esign layout of customer parking and driveways to minimize danger from run-away vehicles**." (Handbook at Module 1 – Civil, Parking and Drives, Ch. 1-2.4.2 (Curbs and Curb Cuts), p. 7 (emphasis added).) In essence, Plaintiffs' interpretation would require the Court to ignore the

suggestive context of the overall design of parking areas at Postal Service facilities and interpret the guidelines, even including those which do not include mandatory terms, as strict, non-discretionary mandates. That would render the Handbook akin to a rulebook, not a description of the suggested standard criteria to be considered in the design and construction of Postal Service facilities.

Several district courts in other circuits have likewise found that decisions concerning the design of Postal Service facilities fell under the discretionary function exception to the FTCA. In *Fothergill v. United States*, two Postal Service customers were injured when another customer drove her vehicle through the front door of a post office building. 566 F.3d 248 (1st Cir. 2009). The court found that decisions whether to install curbs or barriers in a parking lot, when to do so, and how those barriers should be arranged were decisions informed by factors like efficiency, safety, aesthetics and costs. *Id.* The court deemed that such considerations were readily susceptible to policy analysis. *Id.* "So long as there is room for differing policy judgments, there is discretion of the type and kind shielded by section 2680(a)." *Id.*

The Court is satisfied that the relevant plain language of the Handbook evidences the discretion vested in the Postal Service, but *only* as to the Postal Service's decisions regarding the installation of safety barriers to separate pedestrians and sidewalks from vehicular traffic at the Post Office.

Accordingly, the Court turns its inquiry to the second prong of the discretionary function exception analysis established in *Gaubert* to determine whether the Postal Service's discretionary decisions are susceptible to policy analysis and therefore enjoy the protection of the discretionary function exception. *See, e.g.*, *Gaubert*, 499 U.S. at 322–23 ("[E]ven assuming the challenged conduct involves an element of judgment, it remains to be decided whether that judgment is of the

kind that the discretionary function exception was designed to shield.") (internal quotations omitted); *Berkovitz*, 486 U.S. at 546–47 ("[I]f the Bureau's policy leaves no room for an official to exercise policy judgment in performing a given act, or if the act simply does not involve the exercise of such judgment, the discretionary function exception does not bar a claim that the act was negligent or wrongful.").

Beginning with Section 101, the statute from which the Postal Service derives its discretionary authority in the planning, building, and design of its facilities, the Court finds that the Postal Service's decisions not to use certain barriers or remove wheel stops from parking spaces adjacent to the Post Office are clearly policy driven decisions within the scope of its discretion to provide "proper access to existing and future transportation facilities," keeping in mind the "control of costs to the Postal Service." 39 U.S.C. § 101. This statute undoubtedly fashions the Postal Service substantial choice or judgment in designing and constructing access to its facilities, including whether to use certain barriers or wheel stops. Similarly, the Court finds that the relevant provisions of the Handbook leave room for Postal Service employees to exercise policy judgment in the design and construction of Postal Service facilities.

The Court will **DISMISS** Plaintiffs' claims based on the Postal Service's failures to provide safety barriers outside the Post Office or remove concrete wheel stops from the premises (paragraphs 6.1(b), 6.1(e), 6.1(f), and 6.1(g)).

### B. UNSECURED AND MISPLACED WHEEL STOPS

Defendant's motion casts a wide and simple net, arguing that Plaintiffs' claims are entirely subsumed by the discretionary function exception, focusing on Plaintiffs' allegations that bollards or other barriers were required under the Handbook and wheel stops were prohibited.

But Plaintiffs have also alleged a separate and distinct claim that the Postal Service failed to maintain its wheel stops in front of the Post Office in good repair. Specifically, Plaintiffs allege that the Postal Service "failed to remedy ***unsecured, inappropriately placed concrete wheel stops*** that created a known hazardous condition in the parking lot[.]" (Compl. ¶ 5.8 (emphasis added).) They likewise allege that the Post Office "fail[ed] to request that the landlord repair hazardous conditions in the parking lot by securing wheel stops to the ground in the proper location" and "[i]n the alternative, failed to execute the repair of the hazardous condition created by unsecured, improperly placed wheel stops as authorized by the lease agreement." (*Id.* ¶¶ 6.1.g–6.1.h.)[3]

Defendant has proffered no argument as to how the Postal Service's alleged failure to exercise reasonable care with respect to the misplaced and unsecured wheel stops was rooted in policy considerations. Realistically, it would be difficult to see how it could. *Cestonaro*, 211 F.3d at 759; *S.R.P. ex rel Abunabba v. U.S.*, 676 F.3d 329, 338-39 (3d Cir. 2012) ("'[C]ongressional thought was centered on granting relief for the run-of-the-[mill] accidents,' which occurred due to the Government's failure to take basic steps to alleviate specific safety concerns. In such a situation, the Government's conduct is analogous to that of a private citizen who fails to take appropriate action to ensure the safety of visitors on his or her property, and thus no broad public policy concerns are implicated.") (quoting *Dalehite v. United States*, 346 U.S. 15, 28 (1953), *partially overruled on other grounds by Rayonier, Inc. v. United States*, 352 U.S. 315 (1957)) (citation omitted); *see also Caplan v. U.S.*, 877 F.2d 1314, 1316 (6th Cir. 1989) ("[O]nce the

[3] Defendant contends for the first time in its reply brief that the Postal Service leases the Post Office property and is not responsible for maintenance and repair of the property (pursuant to its lease agreement). (Reply Br. at 6–7). The Court rejects Defendant's argument for multiple reasons: Defendant's belated challenge based on this theory deprived Plaintiffs of the chance to respond; it would require the Court to consider the lease agreement that is outside the pleadings; and it is a challenge to the plausibility of Plaintiffs' pleading under Rule 12(b)(6) rather than Rule 12(b)(1), under which Defendant moved.

government makes a policy decision protected by the discretionary function exception, it must proceed with due care in the implementation of that decision.”).

Plaintiff’s claim for failing to remedy misplaced and unsecured wheel stops is the sort of “garden variety” negligence claim that the FTCA is designed to remedy. *Gaubert*, 499 U.S. 322–23; *United States v. Gotha*, 115 F.3d 176, 179–81 (3d Cir. 1997); *Cestonaro*, 211 F.3d at 753–56. Courts have routinely held that the Postal Service owes the same duty of loyalty and care to customers and invitees as a private landowner, including the duty to maintain and repair pedestrian egress and parking areas where the Postal Service should know are susceptible to unsafe conditions. That is because negligence “in the operation of a federal facility” is actionable under the FTCA. *See Gray v. United States*, 845 F. Supp. 2d 333, 340 (D. Me. 2012) (finding the Postal Service negligent for failing to reasonably inspect and correct an icy sidewalk); *Furey v. United States*, 458 F. Supp. 2d 48, 54–56 (N.D.N.Y. 2006); *Asbridge v. United States*, 2019 WL 3976317, *3-5 (W.D. Mo. 2019); *Parrish v. United States*, 157 F. Supp. 3d 434, 439–47 (E.D.N.C. 2016); *Merritt v. United States*, 592 F. Supp. 3d 340, 347-49 (D. Vt. 2022); *see also Cestonaro*, 211 F.3d at 759. Plaintiffs may or may not prevail on the merits, but the discretionary function exception does not bar the Court’s jurisdiction over their claim based on ordinary negligence as to the maintenance of the wheel stops.

The Court will deny Defendant’s Motion to the extent it seeks dismissal of Plaintiff’s ordinary negligence claims for the Postal Service’s failure to exercise reasonable care with respect to the misplaced and unsecured wheel stops.

## IV. CONCLUSION

For the reasons stated above, the Motion to Dismiss will be **GRANTED IN PART and DENIED IN PART**. The Court will **DISMISS**, for lack of subject matter jurisdiction, Plaintiffs’

claims based on the Postal Service's failures to provide safety barriers outside the Post Office or remove concrete wheel stops from the premises (Compl. ¶¶ 6.1(b), 6.1(e), 6.1(f), and 6.1(g).)[4] Plaintiffs' negligence claim alleging the Postal Service failed to properly maintain concrete wheel stops at the Post Office will **PROCEED**. An appropriate Order will follow.

Date: September 25, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

[4] The Court identifies the relevant claims by paragraph because Plaintiffs did not present the claims in their Complaint as numbered counts in accordance with general federal practice. *See* Fed. R. Civ. P. 10.